UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 05-10105-RWZ |
| | ) | |
| FRANKLIN AZUBIKE | ) | |

**MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT AND MOTION FOR A NEW TRIAL**

The Defendant, Franklin Azubike, hereby moves this Court to (1) enter a judgement of acquittal on his behalf of notwithstanding the jury verdict as to both the substantive count of possession with intent to distribute 100 grams or more of heroin, and the conspiracy count for the reasons stated below or (2) grant defendant a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure on the grounds that the evidence weighed heavily against the jury's verdict such that a miscarriage of justice occurred. Mr. Azubike was convicted of both counts on March 29, 2008 after a trial by jury.

## FACTS

The government has charged defendant with possession with intent to distribute 100 or more grams of heroin and joining a conspiracy involved in distributing more than one kilo of heroin.  The government's evidence at trial, when

viewed in the light most favorable to the government, showed that:

- Mr. Azubike knew a man named Peter Ike, who had been involved in a prior brief case pick up in mid February 2005. In fact, Mr. Azubike had a list of Nnewi immigrants in his storage locker in New York which contained the telephone number of Mr. Ike and his family. He also had Mr. Ike's telephone number on a piece of paper. Mr. Azubike's locker did not contain any evidence of drug distribution.

- On February 18, 2005, Mr. Ike was pulled over by the Massachusetts State Police after picking up a brief case containing heroin from the CI, Mukasa. The brief case was seized from him and he was allowed to leave the Boston area. Before he left, he was informed that the police believed the bag contained drugs.

- Mr. Ike left the country shortly after the stop and returned on March 9, 2005. It appears that he traveled to Nigeria.

- Ike called Azubike's cell phone on February 4, 2005 and then again on March 10, 2005. Mr. Azubike was originally scheduled to pick up a bag containing heroin from the government's CI on March 10, 2005. There was no evidence presented regarding the content of the conversation between Mr. Ike and Azubike, assuming that they spoke at all. Mr. Ike did not call Mr. Azubike on or around February 18th, the date of the Ike stop.

• Before Ike or Azubike came into the picture, Solomon, the drug boss, had partnered with the CI, Mukasa, to set up a business that would courier African arts and crafts from Uganda to Malden, Massachusetts.  Solomon coordinated this relationship through Mukasa's ex-law partner, John Kaggwa. Mukasa was a criminal defense lawyer in Uganda, who also acted as a prosecutor at times.

• Mukasa testified that he did not know in advance that he was going to be receiving packages containing drugs.  In fact, he testified that Solomon sent him three brief cases (2 of which he actually received) before revealing to him that heroin was in the bags.  Solomon only revealed that he knew the contents of the bags after Mukasa began cooperating with federal authorities just before the Ike bag was delivered.  These conversations were directed by federal authorities and recorded.  During those taped conversations, Solomon stated that he was careful not to tell people below him what his business was all about.  He also told Mukasa to remove all identifying wrappers from the bag before handing it off to the couriers.

• Three brief cases were sent to Mukasa from Solomon before Azubike's involvement.  Two were picked up by 2 different Nigerian men referred to as "Johnson."[1]  The third

---

[1] It is important to note that two prior pickups were made by men referred to as "Johnson", which were evidently false names.  One of these men was Peter Ike.  Interestingly enough, when Azubike picked up his bag, neither "Mike" nor Azubike used an alias to hide Azubike's identity.  This distinction undermines the government's contention that he

was picked up by an African American woman who told Mukasa
she did not know what was contained therein.[2]

●Before the fourth bag was delivered to Azubike, a man,
who called himself "Mike", told Mukasa that Franklin
(Azubike) would be picking up that bag.  This "Mike" was
apparently in contact with Solomon, although no direct
evidence was presented at trial.

●Prior to delivering the brief case to Mr. Azubike,
Mukasa took off all the wrappers that could identify its
origin.  The heroin was so  expertly secreted in the inside
panel of the brief case that an experienced government agent
even had difficulty locating the compartment.  The brief
cases were also locked.[3]

●Prior to Azubike's arrival at the pickup spot, he and
"Mike" were in contact about the delay of the pickup.  There
was no direct evidence that this "Mike", the man who
connected Mr. Azubike to Mukasa, was aware that drugs were
contained in the brief cases.  While Mr. Azubike and this
"Mike" spoke often with each other prior to the transaction,
their conversations were not recorded.  There were
approximately 130 telephone calls between their cellular

---

knew drugs were in the bag.

[2]It should be noted that Mukasa asked the woman what was in
the brief cases when she arrived.  She said she had no idea.

[3]The fact that the brief case was locked was not elicited
during the first trial.  The first trial is referred to as
Azubike I.  See United States v. Azubike, 504 F.3d 30 (2007)

telephones during February and March.  There were additional
calls between them in late 2004.

• When Mr. Azuibike met Mukasa on March 14th, Mukasa
mistakenly referred to him as Jonathan.  Azubike corrected
him and said his name was "Al Hajji."  Azubike was widely
known by "Al Hajji" in the New York based Nigerian community
as evidenced by witness testimony and letters found in his
storage locker referring to him as "Al Hajji."

• Mr. Azubike went to great lengths to pick up this
brief case including renting a car out of Baltimore
Maryland,[4] driving from New York, and possibly even staying
overnight in Boston when the delivery was stalled.

• Mr. Azubike appeared aware that the transaction was
either illegal or potentially being surveilled.  He remarked
to Mukasa that he was uncomfortable with the area where the
delivery was to occur as there were not enough cars.  Also,
when Mukasa referred to the contents of the bag as "stuff"
over the telephone, Mr. Azubike warned him about talking on
the phones.  This was clearly an attempt to stop third
parties learning what the contraband was that was in the
bag.  Azubike never acknowledged in any form what he
believed the contents of the bag to be.

• Mr. Azubike also never acknowledged knowing Solomon
and never mentioned his name.  Mukasa once raised his name
but Azubike did not react to it as he was ranting about the

_____

[4]There was also evidence that he lost his apartment in New
York and had relocated temporarily to Maryland.

delays involved in the pickup.  There was no evidence that
Mr. Azubike ever spoke with or knew Solomon.

●After Mr. Azubike was stopped by the State Police
following the transaction, he stated that he was staying at
the Collonade Hotel in Boston.  The ICE Agent was unable to
find any evidence that Azubike had in fact recently stayed
at the Collonade.  He also said he was visiting a cousin,
but was not sure where he lived as he was not familiar with
Boston.  He made no comments about the brief case or his
activities that day.[5]

As a threshold issue, defendant submits that the First
Circuit Court of Appeals decision affirming the lower
court's denial of his Rule 29 motions in <u>Azubike I</u>[6] do not
necessarily control here.  In that earlier case, the First
Circuits' view of the facts simply does not comport with the
evidence introduced in <u>Azubike II</u> given the streamlined
approach by the prosecution in presenting its evidence in
the second trial.  Additionally, Azubike II does not suffer
from the same flaws or mispresentation of evidence that

---

[5]While not necessary for this Court's consideration of the
issues, it should be pointed out that at least one major
fact from the first trial differed at the second trial .
Specifically in Azubike I, Mr. Mukasa testified that Mike
was involved in both the third (Ike) and fourth bags
(Azubike) delivered from Solomon.  In Azubike II, Mr. Mukasa
only testified that Mike about Mike's involvement in the
fourth bag.   In fact, he expressly stated that only Johnson
was involved in the Ike bag in Azubike II.

[6]See <u>United States v. Azubike</u>, 540 F.3d 30 (1st Cir. 2007)

occurred in Azubike I both in substance and in argument.[7]
The fact that this Court did not permit the government
witnesses to restate the conversations contained in the
recorded calls in Azubike II helped avoid the mis-citation
of facts that occurred by witnesses in Azubike I.  This mis-
citation of facts in Azubike I invariably resulted in
witness impeachment by the defense but not correction of the
ultimate facts that could be considered for a sufficiency
challenge by the District Court and First Circuit Court of
Appeals.

     In Azubike II, this Court did not permit the
prosecution to restate the facts contained in these
recordings.  Therefore, the mistakes that led to the
reversal in Azubike I and its disjointed factual record,
were avoided in Azubike II.  The record is simply more
coherent and reviewable in Azubike II and lacking in witness
confabulation that potentially confused the District Court's
review of any Rule 29 and 33 Motions presented in the first
trial.  Consequently, this Court should give the record a
fresh review for purposes of deciding sufficiency.

---

[7]It should be noted that the first conviction was overturned
based upon improper remarks an presentation of evidence by
the government in its rebuttal.

**I    THIS COURT SHOULD GRANT DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT AS TO BOTH COUNTS**

The "test for judgment of acquittal is "whether, considering all the evidence as a whole, taken in the light most favorable to the government, together with all the legitimate inferences that can be drawn from such evidence, a rational trier of fact could have found beyond a reasonable doubt." <u>United States v. McNatt</u>, 813 F.2d 499, 502 (1st Cir. 1987)   The "jury's role as a fact finder does not entitle it to return a verdict based upon confusion [or] speculation; its verdict must be on the evidence presented at trial."  <u>United States v. Ceballos</u>, 340 F.3d 115 92nd Cir. 2003) If the evidence is insufficient for any reasonable jury to have found the defendant guilty beyond a reasonable doubt, the Court should enter an acquittal notwithstanding the jury's conclusion to the opposite.  See Rule 29.  If on the other hand, "any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the verdict should be sustained." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)

While inferences can be used to establish knowledge, there must be a "logical and convincing connection between the facts established and the conclusion inferred."   See <u>United States v. Idowu</u>, 157 F.3d 265, 269 (3rd Cir. 1998) The evidence in Mr. Azubike's case did not provide a "logical and convincing" connection between the facts and the conclusion sought to be inferred by the government.  <u>Id</u>.

8

While a reasonable jury could have clearly concluded that Mr. Azubike knew something illegal was in the bag ("stolen jewelry, laundered money, stolen computer chips, counterfeiting plates, forged currency, etc.) the evidence did not support a conclusion that he knew it was drugs.

The defendant was both convicted of both a substantive count of distribution and conspiring with others unknown and unknown to possess drugs with intent to distribute drugs. For purposes of this Motion, there is no real distinction between the two crimes given that they both required the jury to find that he had specific intent and knowledge that the brief case contained drugs. Therefore, while defendant will focus on the knowledge issue primarily in the context of the conspiracy count, the analysis equally applies to the substantive count.

"The 'essence' of conspiracy is an agreement to commit a crime." United States v. Moran, 984 F.2d 1299, 1300 (1st Cir.1993). Thus, a sustainable conspiracy conviction requires "proof beyond a reasonable doubt that the conspirators intended to agree and to commit whatever substantive criminal offense may have been the object of their unlawful agreement." United States v. Cruz, 981 F.2d 613, 616 (1st Cir.1992). See also United States v. DiMarzo, 80 F.3d 656 (1st Cir. 1996)(specific knowledge of conspiracy's object is essential element in conspiracy case) In other words, the government must show two kinds of intent: "intent to agree and intent to commit the

substantive offense." <u>United States v. Gomez-Pabon</u>, 911 F.2d

847, 853 (1st Cir. 1990) A conspiratorial agreement may be

inferred from circumstantial evidence. See <u>United States v.</u>

<u>Aponte-Suarez</u>, 905 F.2d at 490 (1st Cir.1990).

The primary evidence offered by the government to

support Azubike's knowledge that the object of the

conspiracy was drugs or that the brief case contained drugs

was that (1) Azubike had telephonic contact with Peter Ike

in early February and March 2005; (2) Ike knew drugs were in

his brief case given that he was told so by a police officer

when his bag was seized on February 18, 2005; (3)  Mr. Ike

called Mr. Azubike's telephone on March 10, which was one

day after Ike returned from Nigeria, (4) this call was also

made on the day that Mr. Azubike was originally expected to

pick up his bag from Makasa; (5) Azubike maintained regular

contact with Mike during February and March 2005; and (6)

Azubike had conversations with Mukasa that showed he

believed something illegal was contained in that bag he had

picked up.

While this evidence may have demonstrated that Solomon,

Mukasa, Ike and probably Mike knew drugs were in the bag,

the jury was left to speculate as to the defendant's state

of knowledge relative to the object of the conspiracy.  See

<u>United States v. Cuni</u>, 689 F.2d 1353 (11th Cir. 1982)

(defendant must understand essential object of conspiracy)

and <u>United States v. Dimarzo</u>, 80 F.3d 656 (1st Cir.

1996)(specific knowledge of conspiracy's object is an

essential element of conspiracy)   Defendant also concedes
that his evidence clearly demonstrated that Mr. Azubike
agreed to participate in a conspiracy to possess some sort
of illicit object.   The issue at trial and here is, however,
that the government did not present evidence that Mr.
Azubike understood that the object was drugs or that drugs
were contained in the brief case.   See <u>United States v.
Idowu</u>, <u>supra</u> and cases cited above.

It should be stressed that the calls between Azubike
and Ike/Mike were unrecorded.   Therefore, there is no
logical or factual basis to infer that they were talking
about drugs versus some other illegal contraband.   See
<u>United States v. Idowu</u>, <u>supra</u>.   Given the lack of evidence
that the defendant entered into an agreement with anyone to
possess drugs, a judgment of acquittal must be entered on
the defendant's behalf notwithstanding the jury's verdict.

The fact that the evidence shows that Mr. Azubike
entered into an agreement to commit some crime is not enough
under the law to convict him for conspiracy to distribute
drugs.   A jury is not permitted to speculate that he might
have known or might have entered into an agreement to
satisfy an element of the charge.   See <u>United States v.
Cartwright</u>, 359 F.3d 281 (3rd Cir. 2004) and <u>United States
v. Thomas</u>, 114 F.3d 403 (3rd Cir. 1997)   See also <u>United
States v. Ceballos</u>, 340 F.3d 115 (2nd Cir. 2003)(jury cannot
return verdict based upon confusion or speculation) Under
the facts of this case, the jury had to have speculated on

this question of knowledge in order to convict the defendant
on any count.[8]

     A defendant's state of knowledge is difficult to assess
when there is no direct evidence.   It is also axiomatic
that knowledge can be demonstrated through circumstantial
evidence.   The line between circumstantial evidence and
impermissible inferences or speculation is not always clear.
Therefore, the First Circuit has emphasized evidence that
(1) defendant was trusted by those co-conspirators who did
have knowledge and (2) whether he could be expected, given
the attendant facts, to have access to the drugs at some
point during the transaction, in assessing whether the
totality of facts demonstrate sufficient knowledge to
convict.[9]   United States v. Thomas, 467 F.3d 49 (1st Cir.
2006)(agent testified that organizations only give drugs to

_____

[8]In fact, when the evidence leaves the jury with two equally
competing conclusions, one of guilt and one of innocence,
then Court should grant defendant's Rule 29 Motion.   See
United States v. Cassesse, 290 F.Supp. 443, 453 (S.D.N.Y.
2003)(court granted Rule 29 Motion and found that evidence
at best created "equal or nearly equal circumstantial
support for competing inferences of innocence or guilt.")

[9]While the First Circuit affirmed the District Court's
denial of defendant's Rule 29 and Rule 33 Motions in Azubike
I, defendant again states that this Court can and should
make an independent assessment given the new facts and the
cleaner record in the instant case.   It is also relevant
that a cogent dissent was written in Azubike I that
criticized the majority's decision.   See United States v.
Azubike, 504 F.3d at 42.   (Torruella, J.)   This affirmance
involved a split panel and was not challenged en banc given
the remand for a new trial.   It should also be noted that
District Court Judge Zobel was presented with a record that
involve a misrepresentation of evidence by the prosecutor, who
alleged that Mr. Azubike knew Solomon.

trusted member of conspiracy, the courier was traveling internationally and while the box with heroin was sealed, it was just a box) ; <u>United States v. Dimarzo</u>, 80 F.3d 656, 661 (1st Cir. 1998); and <u>United States v. Ortiz</u>, 23 F.3d 21 (1st Cir. 1994). [10] Given the lack of direct evidence of knowledge in Azubike's case, defendant shall review whether there was sufficient evidence that he was trusted by the drug group and whether he had sufficient access to show knowledge using a totality of facts analysis. The following three First Circuit cases involving couriers and lookouts illustrate the threshold level necessary to find knowledge. Again, the defendant does not discuss Azubike I given the problems inherent with that record.

In <u>United States v. Thomas</u>, 467 F.3d 49 (1st Cir. 2006), the First Circuit upheld the conviction of a woman, who was carrying a box of heroin, but denied knowing there

---

[10]The First Circuit has given some weight to materially inconsistent statements given by a defendant to the authorities.   This factor has been primarily relevant when a defendant contends that he did not believe he was engaged in any wrongdoing at all as it can demonstrate consciousness of guilt.  Given that Mr. Azubike conceded consciousness of wrong doing at trial, this issue has less significance here. In any event, Mr. Azubike's statement about where he stayed the night before, even if it was false, was a minor misstatement, which has no bearing on his state of knowledge that drugs were in the brief case. See <u>United States v. Fitz</u>, 317 F.3d 878, 882 (8th Cir. 2003)(despite giving a false name and other factors showing defendant knew transaction was probably not legitimate, this did not add up to knowledge of drugs) and <u>United States v. Mendoza-Larios</u>, <u>supra</u>.

were drugs inside.   The facts of this case showed that: (1)
she spoke to a member of the conspiracy, who did know of the
box's contents, just before picking up the box; (2) the
drugs were not secreted , but were simply sealed in a box
labeled as wine; (3)  she must have been trusted given that
she could have easily accessed the box and the drugs; and
(4) it was likely that she would open the box since she was
traveling internationally to deliver the box.   Therefore,
as both factors, trust and easy access to the contraband
were present in <u>Thomas</u>, the First Circuit held that the jury
was reasonable in inferring that the courier knew about the
drugs.

In <u>United States v. DiMarzo</u>, 80 F.3d 656, 661 (1st Cir.
1997), two brothers drove 100 miles to a drug transaction,
(1) which was knowingly coordinated by the first brother;
(2) the second brother registered at the same hotel as the
first brother but in a separate room; (3) this second room
overlooked the parking lot where the transaction occurred
and he acted as a lookout during the transaction involving
the first brother and the courier; and (4) the second
brother gave testimony at trial that was contradicted by
other witnesses. While there was no evidence that the second
brother had access to the drugs, the degree of familial
trust demonstrated here together with his active role as a
lookout and his inconsistent testimony at trial was
sufficient basis for this Court to uphold the jury's
inference that he knew about the drugs.

Similarly, in <u>United States v. Ortiz</u>, 23 F.3d 21 (1st Cir. 1994), this Court reviewed a defendant's challenge to the sufficiency of whether he knew drugs were in a bag he was carrying.  In <u>Ortiz</u>, the defendant was arrested carrying a bag containing cocaine from a condominium where millions of dollars of cocaine was stored.  This man also  (1) had a key to the condominium where millions of dollars of cocaine were stored, (2) got the bag in question from the same condominium, and (3) was present during the period of time when a codefendant was preparing some cocaine for distribution.  As a preface to its analysis, this Court did note that the government's case was not overwhelming and the defendant's challenge was compelling.  Despite this observation, the Court concluded that the jury's finding that he knew about the drugs was rational given how trusted he was by the organization and the degree of access he had to the condominium where the drugs were stored when they were stored there.  <u>Id</u>.

While this Court rejected the sufficiency claims in the above three cases, they are inopposite to Mr. Azubike's case for two reasons.  First, the evidence in  Azubike's case failed to demonstrated that, Solomon, the drug boss trusted his couriers or those below him with knowledge that the bags contained drugs.  In fact, there was no evidence presented at trial that Mr. Azubike was trusted by or knew anyone in this drug group who had actual knowledge that drugs were in the brief case.  Compare <u>DiMarzo</u> and <u>Ortiz</u>, supra.

Second, the heroin was so expertly concealed in the side panels of a brief case, that Mr. Azubike could not have been expected to gained ready access to the drugs themselves. Compare Thomas, Ortiz and DiMarzo.  See United States v. Mendoza-Larios, 416 F.3d 872 (8th Cir. 2005) (despite false exculpatory statements by couriers and the large amount of cocaine in the car, the fact that they gave their correct names together with the difficulty the Trooper had in finding the secret compartment made the evidence insufficient)  Therefore, based upon both the lack trust and ready access to the drugs together with all the other evidence, it was not reasonable or rational for this jury to have inferred actual knowledge simply because Azubike understood that something improper or illegal was a foot. See United States v. Cartwright, 359 F.3d 281 (3rd Cir. 2004)(insufficient evidence lookout knew transaction involved drugs although he knew transaction was illegal); United States v. Cruz, 367 F.3d 187 (2nd Cir. 2004) (insufficient evidence as courier lacked specific knowledge that drugs were object of transaction); United States v. Dean, 59 F.3d 1479, 1487 (5th Cir. 1995)(evidence that defendant was a lookout does not mean he knew what he was protecting); and United States v. Thomas, 114 F.3d 403 (3rd Cir. 1997)(insufficient evidence of knowledge despite fact that defendant knew transaction was illegal).

**The Question Of Trust In Azubike's Case**

The drug boss in Azubike's case, Solomon, was quite adept at concealing his true activities from those below him.  Consequently, any presumption found in other cases that drug organizations do not entrust large quantities of drugs to couriers is simply not applicable in Mr. Azubike's case.  Compare <u>United States v. Thomas</u>, 467 F.3d at 51.

Solomon's scheme to conceal his drug activities even from the most important people in his distribution chain is illustrated by his relationship with the CI, Mukasa.  Mukasa testified that Solomon got him involved by asking him to be a partner in a courier business that sent packages containing Africa arts and crafts to Sudanese Africans in the United States.  He testified that he did not know drugs were in the bag when he first began his venture.  He only became wary of the bags' contents after observing the discrepancies between what Solomon told him and what he observed about the bags, the fact that Nigerians were picking them up versus Sudanese and given the weight of these bags compared to what he was told they contained.[11] Even so, Mukasa did not have actual knowledge of the contents until the third bag arrived and the police told him of their contents.

---

[11]It should be noted that Mukasa was trained as a lawyer and prosecutor in Uganda and was a relatively sophisticated business man.

Despite Mukasa's integral role in the scheme and trusted position in the courier business, Solomon did not confide in Mukasa but instead told him the bags contained Sudanese arts and crafts, instead of drugs.  Mukasa's calls to Solomon that were later recorded further corroborate Solomon's ongoing attempt to keep those below him in the dark about his criminal designs.[12]

Given Solomon's clear efforts to keep the true nature of his criminal enterprise concealed from those entrusted with the brief cases, the facts do not permit a rational jury to infer that Mr. Azubike, had knowledge of the drugs simply because he possessed a brief case containing substantial amounts of heroin. See United States v. Idowu, 157 F.3d 265, 266-70 (3rd Cir. 1998); United States v. Cartwright, supra; United States v. Cruz, supra; United States v. Fitz, supra; and United States v. Mendoza-Larios, supra.  Compare Thomas, 467 F.3d 46 (1st Cir. 2006). In order for this Court to uphold the conviction, there must have been more. But see Azubike I, supra (majority and compare to Azubike I, supra (dissent).

Of further importance to this question of trust is the fact that the bags were locked.  Mr. Mukasa testified at

---

[12] Solomon's ongoing intent to conceal his drug activities from lower tier workers was revealed in later recorded conversations with Mukasa after he began cooperating with federal agents.   He not only told Mukasa to remove wrappings from the brief case so as not to identify its source, but he also informed Mukasa that the people below him did not know that he was importing drugs.

trial that each bag he received was locked upon arrival. This security measure, together with the fact that Solomon expertly designed a secret compartment in the brief case, further suggests that the upper echelons of the conspiracy did not trust the couriers.

Mr. Azubike's relationship with Mike and Peter Ike does not change this conclusion either. While the evidence at trial was clear that "Mike" was coordinating the details of the transactions between Mukasa and Azubike, there was no evidence that Mike knew about the contents of brief case or that Solomon trusted Mike any more than he trusted Mukasa. If, however, one could reasonably infer, which defendant does not concede, that Mike knew about the contents, there was no evidence that Solomon had permitted Mike to inform anyone else in this tight lipped organization.[13]

Similarly, while there was evidence of a passing and legitimate relationship between Peter Ike and Azubike, there

---

[13] The Court in <u>Azubike I</u> made a significant issue out of the fact that the triad of Ike, Mike and Azubike knew each other and were connected to Solomon. It should be noted that the facts in Azubike II did not show any direct telephonic contact between Ike and Solomon and Mike and Solomon. The evidence did show that Ike and Mike were aware of Solomon's existence and that may have had contact. In any event, the evidence was clear in Azubike II that the defendant neither had contact with Solomon nor acknowledged his existence. In fact, the evidence in Azubike II failed to show that Azubike even knew that the contraband had international origins. The appeals court in Azubike I appears to have mistakenly assumed that Azubike knew the brief case came from Africa; thereby cementing the trust between these three men. The dissent of course disagreed vehemently in <u>Azubike I</u>, <u>supra</u> at 42-44.

was no evidence that they actually spoke on March 10, 2005.
While there was evidence that Mr. Ike and Azubike called
each other's phones on February 5 and March 10, 2005, there
was no evidence that they actually had a conversation.  Even
if, however, it was permissible to infer that they spoke,
which defendant submits there was not, there was no evidence
admitted at trial that Mr. Ike told Mr. Azubike that his
brief case had been seized.   Therefore, the conversations
and contacts between Azubike and Ike/Mike simply do not
supply the necessary level of trust necessary to infer
knowledge.  See United States v. Thomas, 114 F.3d 403, (3rd
Cir. 1997)(despite evidence that defendant went into hotel
room to retrieve suit case for $500, that co-conspirators
called his cell phone, home phone and beeper, evidence
insufficient)  Compare United States v. Thomas, 467 F.3d 49
(1st Cir. 2006)(the fact that one of the drug boss called
defendant together with the degree of easy access to the box
containing the heroin and the international nature of
smuggle, jury could infer knowledge based upon trust) Given
that there was insufficient evidence that Mr. Azubike was
trusted by the organization for the jury to infer knowledge,
the question of whether the defendant had sufficient access
to the drugs for the jury to infer knowledge must be
explored.

**Access To The Drugs**

The evidence was undisputed at trial that the heroin was expertly secreted in the walls or panels of the brief case and the brief cases delivered by Solomon were always locked.  The ICE agent testified that he had a difficult time finding where the drugs were actually located when the bag was originally seized despite having seen them on x-ray. Additionally, the brief case that was given to Mr. Azubike slipped by customs initially and was only recovered because Mukasa called ICE to inform them he had received it.

Even if, somehow that was not enough to deny Mr. Azubike access to the drugs, the evidence also showed that the brief cases were locked.  Therefore, there was a second level of security employed by Solomon to deny people such as Mr. Azubike from gaining knowledge to the contents.  If he could not gain access then how could a reasonable jury conclude on these facts that he was sufficiently trusted to infer the requisite knowledge.

Therefore, unlike the defendants in United States v Thomas, 467 F.3d 49 (1st Cir. 2006) (heroin was simply hidden in a sealed box and courier was carrying it internationally), DiMarzo, supra (courier drove car with secret compartment and was present when drugs were removed from secret compartment) and Ortiz, supra, (in addition to retrieving bag containing cocaine from condo where millions of dollars of cocaine had been stored, he was entrusted with a key to that condo),  Azubike simply did not have the type

of access to the drugs that would permit an inference of
either knowledge or trust.   See <u>United States v. Mendoza-
Larios</u>, 416 F.3d 872 (8th Cir. 2005)(fact that trooper spent
and hour determining where the hidden compartment was in a
car driven by defendant was evidence that courier did not
have ready access to drugs)   There was absolutely no
evidence that he was aware of the hidden compartment or that
he even looked inside the brief case.

**Totality of Facts**

When this Court assesses the totality of facts
regarding Azubike's state of knowledge, it is clear that it
does not rise to the level of <u>United States v. Thomas</u>, 467
F.3d 46 (1st Cir. 2006) as he did not have the level of
access to the drugs that the courier did in <u>Thomas</u>.  She was
traveling internationally with a box full of drugs that,
while sealed, was not hidden in the manner that it was in
Azubike's case.   This is equally true in <u>Ortiz</u> and the
courier in <u>DiMarzo</u> where the defendants had easy access to
the hidden compartments where the drugs were stored and were
obviously trusted by the organization given both that access
and their involvement in the drug transaction.

While there was no direct evidence that the second
brother in <u>DiMarzo</u> had access to the drugs, he was a highly
trusted member of the drug group, given that his brother
coordinated the transaction.  Also he acted as a lookout and
was involved from beginning to end.  Finally, and probably
more important, he testified at trial and his testimony was

22

contradicted by other witnesses.  Appellate Court's
generally will not overturn a jury's verdict when
credibility of the defendant is permissibly factored into
their analysis of knowledge.

While the government might argue that Mr. Azubike's
misstatement to police about where he was staying together
with his covert activities in securing the bag was grounds
for finding knowledge, this contention is simply not
sufficient to infer knowledge as it only reflects
consciousness of wrong doing not knowledge of drugs.  United
States v. Fitz, 317 F.3d 878, 882 (8th Cir. 2003)(despite
circumstantial evidence that he was involved with
transaction and the fact that he gave a false name when
arrested, insufficient evidence)  There are a long line of
cases that support a conclusion that knowledge of wrongdoing
is an insufficient basis to defeat a sufficiency challenge.
United States v. Cartwright, 359 F.3d 281 (3rd Cir.
2004)(insufficient evidence lookout knew transaction
involved drugs although he knew transaction was illegal);
United States v. Cruz, 367 F.3d 187 (2nd Cir.
2004)(insufficient evidence as courier lacked specific
knowledge that drugs were object of transaction); United
States v. Dean, 59 F.3d 1479, 1487 (5th Cir. 1995)(evidence
that defendant was a lookout does not mean he knew what he
was protecting; United States v. Thomas, 114 F.3d 403 (3rd
Cir. 1997)(insufficient evidence of knowledge despite fact
that defendant knew transaction was illegal)  Based upon the
totality of trial facts viewed in the light most favorable

to government, defendant's case is more akin to the above
cases and <u>United States v. Idowu</u>, <u>supra</u>; and <u>United States
v. Mendoza-Larios</u>, <u>supra</u>, than the three threshold cases
from this Circuit, <u>Thomas</u>, <u>Dimarzo</u> and <u>Ortiz</u>, <u>supra</u>.
Compare <u>Azubike I</u>, supra (majority) to <u>Azubike I</u>, supra
(disssent)

       The fact that Solomon was tightlipped and did not trust
those below him with knowledge of the conspiracy's true
object distinguishes Azubike's case from <u>Thomas</u>, <u>Dimarzo</u> and
<u>Ortiz</u>.  This fact, together with the expert manner in which
the drugs were hidden and the lack of evidence that Azubike
had access or was aware of the secret panels, defeats any
inference that he knowing joined the object of the
conspiracy or knew that drugs were in the brief case.

       Therefore, based upon the totality of evidence
presented at trial, this Court should grant defendant's
Motion for Judgment of Acquittal Notwithstanding the Verdict
as to both Counts.  A rational jury simply could not have
inferred that Mr. Azubike either had knowledge about the
drugs in the brief case or that he had agreed to the object
of the conspiracy based upon the totality of evidence
presented at trial, even when it is viewed in the light most
favorable to the government.   Consequently, this Court
should reverse the trial court's denial of defendant's Rule
29 Motion on both counts.

**II    THIS COURT SHOULD GRANT DEFENDANT'S MOTION FOR A NEW TRIAL AS THE WEIGHT OF THE EVIDENCE PREPONDERATED AGAINST THE JURY'S VERDICT**

Rule 33 permits this Court to order a new trial if evidence at trial "preponderates sufficiently against the verdict such that a serious miscarriage of justice may have occurred." <u>United States v. Lincoln</u>, 630 F.2d 1313, 1319 (8th Cir. 1980) When there is any doubt that the evidence fully supports a jury determination, a new trial is an appropriate remedy to insure the defendant the full extent of his rights.  See <u>United states v. Simms</u>, 508 F.Supp. 1188, 1208 (W.D. LA 1980)(new trial granted where "the conclusion that defendant knowingly and intentionally agreed to purchase votes can only be reached from compound inferences") and <u>United States v. Saborit</u>, 967 F.Supp. 1136 (N.D. Iowa)(new trial granted where evidence weighed heavily against verdict such that a miscarriage of justice occurred) and <u>United States v. Campos</u>, 132 F.Supp.2d 1181 (N.D. Iowa) When evaluating the sufficiency of the evidence in the context of Rule 33, the Court can evaluate witness credibility and need not view the evidence in the light most favorable to the government.  See <u>United states v. Davis</u>, 103 F.3d 660, 668 (8th Cir. 1996) and <u>United States v. Sanchez</u>, 960 F.2d 1409, 1413 (2nd Cir. 1992)

In the instant case, the evidence weighed heavily against the verdict by the jury.  At most, the evidence established two competing interests: one that Mr. Azubike was innocent and the other that he was guilty.  See cases

cited in Section I above.  Defendant submits that the Court
should reverse his conviction and order a new trial on the
grounds that the jury must have speculated to find the
element of knowledge that was used to convict Mr. Azubike.
See <u>United States v. Cartwright</u>, 359 F.3d 281 (3rd Cir.
2004)(insufficient evidence lookout knew transaction
involved drugs although he knew transaction was illegal);
<u>United States v. Cruz</u>, 367 F.3d 187 (2nd Cir.
2004)(insufficient evidence as courier lacked specific
knowledge that drugs were object of transaction); <u>United
States v. Dean</u>, 59 F.3d 1479, 1487 (5th Cir. 1995)(evidence
that defendant was a lookout does not mean he knew what he
was protecting); and <u>United States v. Thomas</u>, 114 F.3d 403
(3rd Cir. 1997)(insufficient evidence of knowledge despite
fact that defendant knew transaction was illegal).[14]  These
convictions were a miscarriage of justice and should not
stand.  See <u>Azubike I</u>, supra, (dissent Torruella, J.)

     Wherefore, defendant moves this Court to enter a
judgment of acquittal to all the charges in the instant case
pursuant to Rule 29 or grant a new trial pursuant to Rule 33
of the Fed.R.Crim.P.

                         Submitted By
                         Franklin Azubike's Attorney

---

[14]Defendant incorporates his arguments relative to
speculation and lack of knowledge that were presented in
Section I above as if presented herein.

26

  /s/ James Budreau
James Budreau, Bar# 559931
20 Park Plaza Suite 905
Boston, MA 02116
(617)227-3700


     I hereby certify that I served a copy of this motion
and affidavit through the ECF system   which was sent
electronically to the registered participants as identified
on the Notice of Electronic Filing (NEF) and paper copies
will be sent to those indicated as non registered
participants on the 4th day of March 2008.


                     /s/ James Budreau