UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 05-10105-PBS |
| v. ) | |
| ) | |
| FRANKLIN CHUKWUDINMA AZUBIKE, ) | |
|    a/k/a. "Al Hajji" ) | |
| ) | |
|         Defendant | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGEMENT OF ACQUITTAL NOTWITHSTANDING THE JURY'S VERDICT, OR ALTERNATIVELY, MOTION FOR A NEW TRIAL**

The United States, by and through its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Kenneth G. Shine, Assistant United States Attorney, hereby opposes the defendant's motion for judgement of acquittal notwithstanding the jury's verdict, or alternatively, motion for a new trial. The jury rendered it's guilty verdict on February 29, 2008.

As grounds therefor, the government states that the instant motion is not meritorious, as this Court has already found when it denied the defendant's earlier motion of acquittal (orally argued at the close of the government's case-in-chief).

**I. FACTS:**

The defendant, Franklin Azubike was found guilty on a two count indictment consisting of conspiracy to distribute one

kilogram or more of heroin, and possession with intent to distribute 100 grams or more of heroin.

The events that lead to the arrest of defendant Franklin Azubike started with a controlled delivery of two kilograms of heroin on February 15, 2005, to an individual named Richard Mukusa, "CI," living in Malden, MA. Mukusa, a Ugandan national, immediately began cooperating with government officials and later participated in the recording of telephone calls and other controlled deliveries of this and another suitcase. Mukusa indicated that he had previously been forwarded two similar packages from an individual living in Africa named Solomon. The heroin was concealed within the lining of the walls of a briefcase that was sent via an East African courier in Uganda. The suitcase was discovered during a routine inspection by ICE agents at a Federal Express delivery center in Tennessee. When analyzed by the DEA Northeast Regional laboratory, the cocaine was determined to weigh 2,006 grams and was 86% pure Heroin HCL with a street value in excess of $120,000 (2005 prices).

Over the next few days a number of phone calls were received by Mukusa from individuals located in Africa ("Solomon"), New York (Peter Ike) and Georgia (Roy Oki a/k/a Mike). These calls were recorded and archived by Mukusa. The callers confirmed receipt of the suitcase and scheduled the package's eventual delivery. Mukusa, during these calls, told Solomon that he knew

what was in the suitcases and wanted more money because of the risks involved.  Solomon agreed to increase the fee to reflect between $1,500 and $2,000 per delivery.  On February 19, 2005, an unknown individual, later determined to be Peter Ike, arrived at a predetermined location to pickup the suitcase.  Law enforcement agents from ICE and the Massachusetts State Police "MSP", conducted surveillance of this meeting and Mukusa wore a body-wire transmitter that recorded their meeting.  Ike arrived at the meeting spot, entered Mukusa's vehicle and paid Mukusa $1500.  Mukusa informed Ike that he had removed the shipping labels as instructed.  Ike then exited the Mukusa's car with the briefcase, got into his own car and left the parking lot.  The briefcase in Ike's possession, had been repackaged by law enforcement officials, and now contained only a sham substance.  Ike traveled on the Massachusetts Turnpike, heading south, and was eventually stopped by the Massachusetts State Police.  Ike's vehicle was searched and the briefcase was seized.  During the search, a canine unit pretended to "hit" on the suitcase indicating the presence of drugs.  Ike was told that the briefcase contained drugs and was allowed to leave.  Ike was given a receipt for the suitcase and directed to contact Lt. Thomas Coffey of the Massachusetts State Police Drug Unit.  A few days later, Ike left the United States traveling to London and eventually Nigeria.  Ike remained in Nigeria and returned to the United

States on March 9, 2005. Upon his return Ike telephoned the defendant Franklin Azubike (2 calls). Those calls were not recorded.

On March 4, 2005, Mukusa received another suitcase delivery from Uganda. The suitcase was similar in size and weight to the previously delivered suitcases. This suitcase was found to contain another two kilograms of pure heroin (1,906 grams of pure 83% Heroin HCL). The heroin, as with the previous delivery, had been secreted within the lining of the briefcase. On the day of the delivery, March 4, 2005, Mukusa received a call from Africa (Solomon) confirming receipt of the suitcase. Over the next few days Mukusa received a series of calls from other members of the conspiracy (Roy Oki a/k/a Mike and Franklin Azubike a/k/s Al Hajji) to make delivery arrangements. On or about March 11, 2005, the defendant, Franklin Azubike contacted Mukusa to make the final plans. Azubike, referred to himself as "Al-Hajji" during the call and expressed frustration that the package was not immediately available for his pickup. A series of calls were made between Mukusa and Azubike finalizing the delivery. Azubike indicated, in essence, that they should not talk about this on the phone stating "don't say nothing more, don't say anything." On the date of the delivery, March 14, 2005, Azubike contacted Mukusa and changed the delivery location, indicating that it was not busy enough and there were not enough people around. The

original 1,906 grams of heroin had now been removed and a smaller sample, 106 grams, has been replaced within the suitcase and the suitcase was placed in the back of Mukusa's car. At 12:05 p.m. Azubike arrived at the predetermined location driving a blue Chevrolet Malibu sedan with Maryland registration. Azubike was seen by the law enforcement agents walking around the parking lot and eventually entered Mukusa's car. Mukusa stated that once in the car, Azubike handed him $2,000 and removed the suitcase. Azubike was seen exiting the Mukusa's auto with the suitcase in hand. The conversation between Mukusa and Azubike was not recorded but was overheard by the ICE agents. Azubike walked to his car and was seen rearranging the luggage in his car's trunk and placing the suitcase within the trunk. Video surveillance captured Azubike in the parking lot with the suitcase and his actions at the trunk of his car. Azubike then left the parking lot and within a few minutes places two calls to one of the conspirators (Roy Oki). Azubike's car was followed and eventually traveled south on Interstate 95. At approximately 1:30 p.m., Azubike's car was stopped by MSP Trooper James Hanlon. Hanlon had been instructed to stop the vehicle by the officers involved in the earlier delivery. Azubike was then asked a number of threshold questions. Azubike told Trooper Hanlon that he was visiting his cousin in Boston, but was unable to state his cousin's name or his address. Azubike further stated that he had

stayed at the Colonnade Hotel in Boston the previous night.  A review of the records of the Colonnade Hotel indicated this to be untrue.  Azubike was then placed under arrest and the car was searched.  The suitcase containing the representative sample of heroin was recovered from the trunk of the car.  Additionally seized were vehicle rental documents and rental documents from a storage locker in New York.  It was determined that the vehicle Azubike was driving was rented earlier in the week, in another's name, from Alamo Rental in Baltimore, MD.

On March 23, 2005, ICE agents searched the New York storage locker assigned to Franklin Azubike.  During the search the agents recovered numerous papers and personal effects of Franklin Azubike.  Seized were date books and notebooks containing the name of Peter Ike, a business card with Ike's phone number and telephone toll records in the name of Franklin Azubike.  A review of the phone records showed a number of calls between Azubike's phone, Peter Ike's phone, Roy Oki's phone, and calls to Nigerian exchanges.

One week after Azubike's arrest, Peter Ike left the United States.  Ike's itinerary indicated that he left the United States, out of Miami Florida, en route to London and eventually Nigeria.  As of this date, Peter Ike has not re-entered the United States.

Following all of the evidence, the jury found the defendant

guilty of conspiring to distribute more than one kilogram of heroin and guilty of possession with intent to distribute more than 100 grams of heroin.

## II. STANDARD OF REVIEW

As the First Circuit has stated: "The barrier which confronts a sufficiency-of-the-evidence challenge in a criminal case is a formidable one." United States v. Jiminez-Perez, 869 F.2d 9, 10 (1st Cir. 1989). And that is equally true whether the posture of the case is before this Court on a Rule 29(c) motion, or before the court of appeals on direct appeal by the defendant or on appeal by the government of a Rule 29(c) acquittal, as the standard to be applied is identical whether the issue is before the district court or the court of appeals.

In examining a sufficiency challenge, this Court must "view the evidence, together with all reasonable inferences that may legitimately be drawn therefrom, in the light most favorable to the government." United States v. Campa, 679 F.2d 1006, 1010 (1st Cir. 1982). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). *See also* United States v. Felton, 417 F.3d 97, 104 (1st Cir. 2005) ("the district court's acquittal can be

upheld only if no reasonable jury could find the elements of the crime charged beyond a reasonable doubt."). The government's "burden of proof can be satisfied by either direct or circumstantial evidence, or by any combination thereof. [citations omitted] As long as the evidence taken in its entirety supports a judgment of conviction, it need not rule out every other reasonable hypothesis of innocence." United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994). It is not necessary that the government's proof compel a guilty finding; it is only necessary that a reasonable jury could find the elements of an offense beyond a reasonable doubt. Id. at 706-707.

The First Circuit Court of Appeals concluded that the evidence in Azubike I[1] was sufficient to support the jury's verdict. In Azubike II, the government presented the same quantity of evidence, but in a more succinct and clearer fashion. This clarity in the evidence's admission avoided the apparent confusion encountered in Azubike I. It is unclear why this evidence, which was legally sufficient in Azubike I, is now legally insufficient.[2]

The instant motion is not based on any new evidence. It is bases solely on the same claims of insufficiency of the evidence that were raised in the defendant's earlier motions which the Court

---

[1]. See United States v. Azubike, 540 F.3d. 30 (1st Cir. 2007)

[2]. It should be noted that the first conviction was overturned based upon improper remarks and presentation of evidence by the government in its rebuttal.

has already denied.

WHEREFORE, the government respectfully requests that this Court deny the defendant's motion for judgement of acquittal notwithstanding the jury's verdict, or alternatively, motion for new trial.

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

March 14, 2008             By:  /S/ Kenneth G. Shine
                                   KENNETH G. SHINE
                                   Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

\_\_\_\_\_This is to certify that I have this day served upon counsel of record a copy of the foregoing document by electronic filing notice.

                                      /s/ Kenneth G. Shine
                                      KENNETH G. SHINE
                                      Assistant U.S. Attorney