```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
     v.                       )    Crim. No. 05-10105-RWZ
                              )
FRANKLIN AZUBIKE              )
```

**DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT AND MOTION FOR A NEW TRIAL**

The Defendant, Franklin Azubike, hereby moves this Court to reconsider its denial of the Defendant's Motion For Judgment Of Acquittal Notwithstanding The Verdict And Motion For A New Trial. As grounds defendant states the following in addition to the grounds previously contained in his original motion:

    1. After the close of evidence (Azubike II) and in the above entitled motion defendant argued that evidence of the Peter Ike stop had not been presented in the first trial (Azubike I)

    2. Specifically , defendant argued in Azubike II that, there was no admissible evidence presented in Azubike I demonstrating that Mr. Ike was told by Trooper Hines that (a) there were drugs in the bag he was transporting and (b) a dog alerted to the presence of those drugs. Counsel contrasted this lack of evidence in Azubike I to the fact that such evidence was presented in Azubike II.

1

2. After a review of the transcripts, it is clear that the jury in Azubike I heard admissible testimony that (1) the head investigating Trooper told the Canine Officer to do engage in a ruse with Ike and tell him the bag contained drugs, (2) the bag was seized by that canine officer from Ike and (3) a receipt was given to Ike. See Transcripts from Azubike I attached hereto.[1]  While counsel was technically correct that no admissible evidence was presented in Azubike I that showed Ike was actually told about the drugs, there is no real qualitative difference between the evidence presented in Azubike I and II on this point. The reality is that both juries were apprised of the fact that the ruse occurred and the bag was taken from Ike after a dog alert. Therefore, it would have been reasonable for both juries to have concluded that Mr. Ike was aware that drugs were supposedly in the seized bag.

3. The question of whether this Court believes that the evidence was sufficient to find that the defendant knew that the brief case contained drugs is still a live issue, despite the government's argument to the contrary. Although

---

[1] As pointed out by the government during oral argument, the Judge only struck the portion of the Ike stop that related to what was actually said during the stop between Ike and the canine officer. The fact that the ruse was employed and the bag taken was not stricken.

2

the decision in Azubike I stands, it reflects the decision of two of three First Circuit judges and was based upon a confusing trial record that is somewhat different from the present one.  Even if the facts were identical in both cases, the fact that the third justice on the appellate panel in Azubike I, the Honorable Juan Torruella, found that the evidence was insufficient to convict him, clearly leaves room for this Court to make an independent decision and for subsequent review. United States v. Azubike, 504 F.3d 30, 42 (2007)

Wherefore, defendant moves this Court to reconsider its order denying the above referenced motions.

Submitted By
Franklin Azubike's Attorney

 /s/ James Budreau
James Budreau, Bar# 559931
20 Park Plaza Suite 905
Boston, MA 02116
(617)227-3700

I hereby certify that I served a copy of this motion and affidavit through the ECF system    which was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the 19th day of March 2008.

/s/ James Budreau

3

A. No. The dog is only trained to smell narcotics, Your Honor. It was not a real --

Q. The dog didn't really respond. He just --

A. Well, he responded at the owner's direction to make it look like there were drugs in the package.

BY MS. LEONEY:

Q. And what happened after Mr. Ike was informed that there were suspected narcotics in the bag?

A. Again, Sergeant Hines was instructed to tell Mr. Ike that, you know, he believed there were narcotics in there, but wasn't sure, and that we needed to seize the briefcase to conduct further investigation. And we gave Mr. Ike a receipt for the briefcase so that someone on the other end would actually know that the briefcase was seized by the police as opposed to disappear without an explanation.

Q. Now, when you say somebody on the other end, who are you referring to?

A. The receiver of that package would be quite concerned if Mr. Ike showed up there with a briefcase without heroin in it and it might jeopardize Mr. Ike's safety. We didn't want to do that.

Q. Now, did Mr. Ike indicate why he was in Massachusetts?

A. Yes.

Q. What did he say?

A. He told Sergeant Hines he was down there on some union

Q. And do you know who stopped him?

A. Sergeant Steven Hines.

Q. Did you ask Sergeant Hines to stop that car?

A. I did.

Q. And did he do that?

A. He did.

Q. And what happened next?

A. Sergeant Hines had some conversation with the operator, Mr. Ike, identified him; and then as part of our ruse, I had instructed a State Police canine to arrive on the scene five minutes later and that happened as well.

Q. And what happened after the canine arrived?

A. Right about the time the canine arrived, Sergeant Hines searched the trunk of the vehicle with Mr. Ike's consent, showed some interest in the briefcase which Sergeant Hines was aware of our investigation. At his direction, Mr. Ike attempted to open the briefcase and he was unable to because we had a different combination. And we needed a reason to seize that briefcase to further this investigation. So, the best we could come up with was have a State Police drug dog come to the scene and smell the suitcase and the handler told Sergeant Hines that the dog indicated for narcotics.

BY THE COURT:

Q. Even though this dog was not trained to smell that powdered sugar?

Case 1:05-cr-10105-RWZ    Document 139-2    Filed 03/19/2008    Page 3 of 5

33

business and was very vague about where he was and said he was in the Revere, Massachusetts area, but --

    MR. BUDREAU: Your Honor, if I may, I don't know if Mr. Coffey was listening to the conversation or this is something he was told.

    BY THE COURT:

Q. Were you there with defendant?

A. Sergeant Hines told me this.

    MR. BUDREAU: Well, I would object on hearsay.

    BY MS. LEONEY:

Q. And with regard to -- was Mr. Ike sent on his way after the dog hit on the bag?

A. He was.

Q. And what happened to the bag?

A. I took the briefcase back to my office that evening.

Q. And did you provide that suitcase later to Special Agent Diorio?

A. I did.

Q. Was Special Agent Diorio also at the -- at the barracks?

A. At some point after that, yes.

Q. And after the bag was seized and Mr. Ike was on his way, did Mr. Ike later contact you?

A. He did.

Q. And when did he do that?

A. Within a day or two, I received a couple of voice mails on

1  or Franklin Azubike or Franklin during any of the recorded
2  conversations or any of the conversations that are a part to
3  this case.
4
5              CROSS-EXAMINATION
6  BY MR. BUDREAU:
7  Q. And with that, Lieutenant Coffey, I know that you have
8  reviewed transcripts and there is a lot of information.  So I
9  understand that it's easy to confuse some of the names.  You
10 did mention earlier, though, that a man by the name of Mike may
11 have made reference to a Franklin, correct?
12 A. Yes.
13 Q. Is that possibly where you came up with the name Franklin
14 during that conversation?
15 A. Yes.
16 Q. Not from Mr. Solomon, but from Mike?
17 A. Yes.  My memory is refreshed.  It's from Mike.
18 Q. Thank you.  In terms of the stop of Mr. Ike, you talked
19 about a dog alert and you talked about what the officer said.
20 Were you present during that?
21 A. I wasn't at the vehicle.  I was parked about 50 yards back.
22 Q. No.  I guess my question was:  Did you hear what went on?
23 A. No, I did not.
24         MR. BUDREAU:  Your Honor, I move to strike the
25 prior testimony.  I thought he was present.  It is clearly

hearsay and I would move to strike the prior testimony by him.

THE COURT: Okay.

MS. LEONEY: Just note my objection, Your Honor.

THE COURT: What is the basis of the objection?

MS. LEONEY: He was on radio and he was involved.

THE COURT: Well, if he heard it, he can tell us.

MR. BUDREAU: But he told us that he didn't hear by himself.

BY THE COURT:

Q. Well, did you hear the conversation at the time of the arrest?

A. No.

MR. BUDREAU: Motion to strike granted, I assume?

THE COURT: Yes.

MR. BUDREAU: Thank you. And would the Court --

THE COURT: It means, Members of the Jury, don't use the information -- the testimony concerning what was said at the time of the arrest. I mean, the witnesses who actually were there can tell us about that.

BY MR. BUDREAU:

Q. And you were present during Mr. Azubike's stop?

A. No.

MR. BUDREAU: I have no further questions.

THE COURT: Any redirect?

MS. LEONEY: No, Your Honor.